## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

JONATHAN BOYER          :          DOCKET NO. 14-cv-0914
   D.O.C. # 55952

VERSUS                  :          JUDGE TRIMBLE


BURL CAIN               :          MAGISTRATE JUDGE KAY


## REPORT AND RECOMMENDATION

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C § 2254 filed by Jonathan Boyer ("petitioner") [doc 1]. The petitioner, who is represented in this matter, is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary at Angola. Burl Cain ("respondent"), warden, has responded [doc. 12].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons IT IS RECOMMEDED that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

### A. *Conviction and Direct Appeal*

On the evening of February 4, 2002, the petitioner and his brother, Anthony Boyer, were walking along a road in Sulphur, Louisiana. *State v. Boyer*, 56 So.3d 1119, 1124 (La. Ct. App. 3d Cir. 2011), *reh'g denied*, Mar. 16, 2011. Bradley Marsh offered them a ride in his truck and they

accepted. *Id.* Petitioner then demanded money from Marsh and, when Marsh did not comply, petitioner shot him fatally three times in the head and then took valuables from him. *Id.*

On March 8, 2002, the petitioner was apprehended in Jacksonville, Florida. *Id.* Petitioner was indicted on a charge of first degree murder in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, on June 6, 2002. Doc. 8, att. 2, p. 196. On May 21, 2007, the indictment was amended to second degree murder and the petitioner was also charged by bill of information with armed robbery with a firearm. *Id.*; *Boyer*, 56 So.3d at 1124.

On September 29, 2009, the petitioner was convicted on both counts by a jury. Doc. 8, att. 2, p. 189. He was then sentenced to life imprisonment for the second degree murder conviction and to a total of 104 years for the armed robbery conviction, to be served concurrently and without the possibility of parole for either. *Id.* at 192–93.

### B.  Direct Appeal

The petitioner appealed his conviction and sentence to the Louisiana Third Circuit Court of Appeal alleging several assignments of error. *Boyer*, 56 So.3d at 1127–62. Among these, he alleged:

1.  The Third Circuit erred when it reversed the trial court's pretrial ruling permitting testimony from an expert on the psychology of confessions and interrogations.

2.  The trial court erred when it sustained the state's objection to questions about domestic abuse allegations made against Anthony Boyer.

3.  The Third Circuit erred when it affirmed the trial court's ruling that results of polygraph testing of two persons were inadmissible.

4.  The petitioner was tried in violation of his statutory and constitutional rights to a speedy trial.

5.  The petitioner's constitutional rights were violated when he was convicted of murder by a majority verdict rather than a unanimous verdict.

*Id.* The Third Circuit declined to consider the fifth assignment of error listed above, based on the petitioner's failure to adequately brief this claim. *Id.* at 1149–50 (citing Uniform Rules of Louisiana Courts of Appeal [URLCA], Rule 2-12.4). It reviewed all other claims on the merits and found no error in its own actions or those of the trial court. *Id.* at 1125–62. Accordingly, it affirmed the defendant's convictions and sentences on February 2, 2011. *Id.* at 1162.

The petitioner applied for a writ of certiorari to the Louisiana Supreme Court which was denied on January 20, 2012. *State v. Boyer*, 78 So.3d 138 (La. 2012) (mem.). He then petitioned the United States Supreme Court for a writ of certiorari which was granted in part on October 5, 2012, but then dismissed as improvidently granted on April 29, 2013. *Boyer v. Louisiana*, 133 S.Ct. 420 (2012) (mem.); *Boyer v. Louisiana*, 133 S.Ct. 1702, 1704 (2013) (mem.).

### C.  *Habeas Petition*

The petitioner did not file an application for post-conviction relief with the state. Instead he filed the instant petition for a writ of habeas corpus with this court on April 29, 2014. He renews the assignments of error excerpted above from his direct appeal:

1.  The Third Circuit erred when it reversed the trial court's pretrial ruling permitting testimony from an expert on the psychology of confessions and interrogations.

2.  The trial court erred when it sustained the state's objection to questions about domestic abuse allegations made against Anthony Boyer.

3.  The Third Circuit erred when it affirmed the trial court's ruling that results of polygraph testing of two persons were inadmissible.

4.  The petitioner was tried in violation of his constitutional right to a speedy trial.

5.  The petitioner's constitutional rights were violated when he was convicted of murder by a majority verdict rather than a unanimous verdict.

Doc. 1, pp. 4–58.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before we proceed to a consideration of the merits of the issues raised in the petition, we must consider the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must

have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must

demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
#### ANALYSIS

As a preliminary matter we review the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If we find that the claim is procedurally viable, we then look to its merits under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here we note that the petitioner's conviction became final at the conclusion of direct review, when the United States Supreme Court dismissed its writ of certiorari on April 29, 2013. The petitioner did not seek post-conviction relief or other collateral review at the state level. The next relevant date was the filing of the petition before us, on April 29, 2014. Three hundred and sixty-four days passed between the two relevant dates; accordingly, this petition is timely under § 2244(d).

#### B. *Exhaustion of State Court Remedies and Procedural Default*

##### 1. *Exhaustion of state court remedies*

The petitioner renews five claims from his direct appeal. All claims were properly presented to the Louisiana Supreme Court. The petitioner does not introduce entirely new factual allegations or legal theories in his presentation of these claims. Therefore we find that he has exhausted his state court remedies for all claims in the instant petition.

### 2.  *Procedural default*

Applying the standards described above, we now consider whether grounds for procedural default exist. Here the last decision on the merits came from the Third Circuit on direct appeal. The Third Circuit reached the merits of every claim raised here, except the one relating to unanimity in the jury verdict. It declined to consider this claim on the grounds that the petitioner had failed to brief it, pursuant to URLCA, Rule 2-12.4. We must therefore determine whether this ruling constituted grounds for traditional procedural default.

To serve as grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted). The petitioner states that no procedural default should be found by the application of Rule 2-12.4 here, contending that the rule was neither firmly established nor regularly followed. To this end he cites several Third Circuit cases where claims were still considered despite a bare-bones briefing, or considered abandoned only due to an alleged failure to brief at all.[1]

However, Rule 2-12.4 is discretionary. It provides in part that "[t]he court **may** consider as abandoned any assignment of error or issue for review which has not been briefed." URLCA, R. 2-12.4(B)(4) (emphasis added). "A discretionary rule ought not to be disregarded automatically upon a showing of seeming inconsistencies. Discretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an

---

[1] *E.g.*, *Maxwell v. Cayse*, 54 So.3d 118, 122–23 (La. Ct. App. 3d Cir. 2010) ("While the cursory, blanket assertion set forth by Mr. Cayse in brief, unsupported by any legal argument, falls incredibly close to abandoning his assignment of error as well, it is asserted in brief, however fleetingly. Accordingly, we will address it out of an abundance of caution.") However, we cannot assign much weight to these citations in comparison to the petitioner's case, as we have no way of comparing the amount of briefing done in these cases.

unyielding rule." *Walker v. Martin*, 131 S.Ct. 1120, 1130 (2011). Therefore the fact that the Third Circuit does not always exercise this rule does not invalidate its use in the petitioner's case.

A discretionary state rule may still be found inadequate as grounds for procedural default if discretion is exercised "to impose novel and unforeseeable requirements without fair or substantial support in prior state law." *Id.* The petitioner claims that such an exercise occurred here. He contends that his briefing of the unanimity claim should have been adequate under Rule 2-12.4.[2] The Third Circuit disagreed, finding that the petitioner failed to demonstrate how the petitioner's linchpin case on this issue, *McDonald v. City of Chicago*, applied to his arguments on jury unanimity. *State v. Boyer*, 56 So.3d at 1150.

The petitioner does not attach a copy of his brief to the Third Circuit; therefore we have only his representations of its adequacy in the memorandum before us, as well as those provided in a declaration by another attorney.[3] Even if we accept this representation as an accurate description of the contents of the petitioner's brief, our review leads us to agree with the Third Circuit's findings.

In *McDonald*, the issue of jury unanimity is only referenced under a discussion of "jot-for-jot incorporation." 130 S.Ct. at 3093–3096. There the Court remarked:

> We have, moreover, resisted a uniform approach to the Sixth Amendment's criminal jury guarantee, demanding 12-member panels and unanimous verdicts in federal trials, yet not in state trials. In recent years, the Court has repeatedly declined to grant certiorari to review that disparity. While those denials have no precedential significance, they confirm the proposition that

---

[2] He states that his briefing of this claim included (1) an assertion that the majority verdict scheme in general and his majority-verdict conviction in particular violate the Sixth Amendment right to a jury trial, as incorporated by the Fourteenth Amendment; (2) reference, with citations, to the more extensive briefing he submitted to the trial court on this issue; (3) a discussion of the most recent Louisiana Supreme Court cases on majority verdicts, with acknowledgment that these constituted binding state law precedent; and (4) citation to the most recent United States Supreme Court opinion to discuss non-unanimous juries, with a pin-cite to the three pages of the decision which he claims are relevant to his case. Doc. 1, pp. 47–48 (citing *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3035 (2010)).

[3] James H. Looney, director of the Louisiana Appellate Project, described the briefing of that claim and stated that the Third Circuit's ruling, in considering the claim abandoned, violated "uniform practice" based on his experience. Doc. 15, att. 1.

> the "incorporation" of a provision of the Bill of Rights into the Fourteenth Amendment does not, in itself, mean the provision must have precisely the same meaning in both contexts.

*Id.* at 3094 (internal citations omitted).  It also recited the holding from *Apodaca v. Oregon*, 92 S.Ct. 1628 (1972), that the Sixth Amendment requires jury unanimity in federal but not state cases. *Id.* at 3035 n. 14.

These references appear antithetical to the petitioner's arguments on the issue. A mere citation to a case would hardly constitute adequate briefing of the petitioner's contentions. Additionally, we see no reason why the Third Circuit should accept the petitioner's references to previous arguments submitted to the trial court in lieu of adequate briefing. We therefore find that the Third Circuit's ruling had "fair and substantial support" within Rule 2-12.4, and so the application of this rule creates adequate grounds for procedural default.

A procedural default may still be excused, however, if the petitioner can show cause and resulting prejudice for his default or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."[4] *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). Here the petitioner makes no argument under either basis for excuse. We therefore find that the jury unanimity claim has been procedurally defaulted. As the state court remedies were exhausted for the remaining claims and they were all considered on the merits, we find no basis for procedural default in any of them.

---

[4] To establish cause, the petitioner must show that some external, objective factor impeded his efforts to raise the claim in a procedurally proper manner. A finding of fundamental miscarriage of justice, on the other hand, depends on a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986). The factual innocence standard means that the petitioner must show a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997).

### C.  Substantive Analysis

Having determined which claims can be heard by this court under § 2254, we will now consider each one by first ascertaining the appropriate standard of review and then applying that standard to the merits of the argument.

> 1.  *Whether the Third Circuit erred when it reversed the trial court's pretrial ruling permitting testimony from an expert on the psychology of confessions and interrogations.*

The petitioner first contends that his constitutional rights were violated by the Third Circuit's ruling barring the admission of expert testimony in his favor. Because this question involves application of a rule of law to uncontroverted facts, we review it as a mixed question of law and fact. *Ornelas v. United States*, 116 S.Ct. 1657, 1662 (1996).

At trial the defense contended that it was Anthony Boyer who shot Marsh. Doc. 10, att. 2, pp. 180–81; Doc. 10, att. 7, pp. 116–44. Accordingly, the petitioner sought to undermine his prior confession by introducing evidence from an expert, Dr. Simon Fulero, on the psychology of false confessions and interrogations. At a *Daubert* hearing Fulero outlined the scientific basis of his proposed testimony. He testified that there was a recognized subspecialty within forensic psychology dealing with interrogations and false confessions. Doc. 9, att. 7, pp. 154–55. However, he also admitted that there was no scientifically reliable method for determining whether a confession was true or false. *Id.* at 144.

The trial court ruled that Fulero met the admissibility requirements for expert witnesses. *Id.* at 227–30. The Third Circuit reversed this ruling before trial, stating:

> Allowing expert testimony regarding "false confessions" invades the province of the jury. The jury is most capable of ascertaining the truth and validity *vel non* of confessions—not experts.

Doc. 8, att. 11, p. 81.

A criminal defendant has the constitutional right to present evidence to the factfinder, including witness testimony. *Washington v. Texas*, 87 S.Ct. 1920, 1922–23 (1967) (citing U.S. CONST. Amends. VI, XIV). Accordingly, the court may not arbitrarily bar a criminal defendant from putting on witnesses in his favor. *Roussell v. Jeane*, 842 F.2d 1512, 1515–16 (5th Cir. 1988). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 108 S.Ct. 646, 653 (1988).

Under both federal and Louisiana law, expert testimony is subject to strict gatekeeping requirements based upon its scientific reliability and potential to help versus confuse or prejudice the jury. *State v. Foret*, 628 So.2d 1116, 1120–23 (La. 1993); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786, 2795–98 (1993). Here the Third Circuit evidently found the testimony would be of little value under this test. Based on the witness's own statement that this field could not provide reliable methods for determining whether a confession was false, we are inclined to agree.  The petitioner's rights were therefore not violated by exclusion of Fulero's testimony.  This this claim offers no basis for federal habeas relief.

### 2. Whether the trial court erred when it sustained the state's objection to questions about domestic abuse allegations made against Anthony Boyer.

The petitioner next contends that his constitutional rights were violated when he was prevented from questioning a witness, Anthony Boyer, about domestic abuse allegations. Because this question involves application of a rule of law to uncontroverted facts, we review it as a mixed question of law and fact. *Ornelas*, 116 S.Ct. at 1662.

Anthony Boyer appeared as a witness for the state. Doc. 10, att. 4, p. 112. He began by admitting that he had agreed to testify in the petitioner's case as part of his own plea deal. *Id.* at

113. He then testified to the events of February 4, 2002, stating that it was the petitioner who had shot Bradlee Marsh. *Id.* at 113–15.

As stated under the previous claim, the defense's case rested on the contention that Anthony Boyer was the one who shot Marsh. Accordingly, defense counsel asked in cross-examination about recent domestic violence allegations against Anthony Boyer. *Id.* at 149. The state objected and the trial court sustained the objection. *Id.* at 149, 156–57. This ruling was then incorporated as an assignment of error in the petitioner's motion for a new trial. Doc. 8, att. 11, p. 222. As a result, according to the petitioner, the defense could not show that Anthony Boyer "was a violent drunk, more than capable of committing the murder." *Id.* at 223. The petitioner also includes post-trial statements from five jurors, who say that their opinion of Anthony Boyer as a suspect might have been swayed by learning that he had beaten his wife. *Id.*

A criminal defendant has the right to confront witnesses against him. U.S. CONST. Amends. VI, XIV. The right of confrontation is part of the criminal defendant's constitutional guarantee of "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S.Ct. 1727, 1731 (2006). This guarantee is impermissibly abridged "by evidence rules that infringe upon a weighty interest of the accused **and** are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (emphasis added). However, the right of confrontation "does not guarantee defendants cross-examination to whatever extent they desire." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 106 S.Ct. 1431, 1435 (1986).

Under both Louisiana and federal law, no rule of evidence provides for inquiry into prior bad acts of a non-party witness **except** to attack his credibility.[5] LSA-C.E. arts. 404(A)(3), 607–609; *see also* FED. R. EVID. 608(b). Prior bad acts of a witness "may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime . . . or as constitutionally required." LSA-C.E. art. 608(B). Therefore, a prior bad act that did not result in a conviction may still be admitted under Louisiana law if it is constitutionally required but it must also relate to his credibility. This conforms with the federal rule, which limits use of non-conviction prior bad acts of a witness to those "probative of truthfulness or untruthfulness." FED. R. EVID. 608(b).

The petitioner contends that the existence of these allegations could be used to show Anthony Boyer's interest in testifying, on the basis that the state might decline to charge him in exchange for favorable testimony. The state contended, and the Third Circuit accepted, that the state's domestic violence unit had "rejected the charge" without making any sort of arrangement with Anthony Boyer. *Boyer*, 56 So.3d at 1128. The petitioner asserts that the state did not provide adequate proof of this. He contends that he would have proven that domestic violence charges might still have been threatened against Anthony Boyer to secure his testimony had the trial court allowed an evidentiary hearing. *See* Doc. 1, pp. 19–21. However, Anthony Boyer had already admitted his interest by stating that he was receiving a reduced sentence for his role in the armed robbery of Marsh in exchange for his testimony. We therefore find that, even if the threat of a domestic violence charge could have been used to show interest, it would be cumulative to the interest already shown.

---

[5] Although Article 607(C) provides that a witness may be examined on "any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony," the comments make it clear that the scope of this examination is still subject to Article 608(B)'s limitation on the uses of prior bad acts. LSA-C.E. art. 607(C); *id.* at cmt. (j).

Instead we find that the petitioner attempted to raise the domestic violence allegations for the most obvious reason: not to prove that Anthony Boyer was an untruthful person but to prove that he was a violent person who acted in conformity with that trait on the night of February 4, 2002. This is borne out by the petitioner's consistent presentation of the primary necessity of this evidence. Exclusion was thus a proper exercise of discretion by the trial court.

We find no constitutional violation based on the petitioner's inability to evade firmly established rules of evidence. Though Anthony Boyer's violent character certainly related to a weighty interest of the petitioner, the petitioner does not show that the rules here are "arbitrary and disproportionate to the interest they are designed to serve."[6] We consider the interest of limiting admissibility of prior bad acts in order to prove guilt of a current offense to be worthy of the protection it is afforded.[7] Accordingly, we conclude that this claim offers no basis for federal habeas relief.

### 3. *Whether the Third Circuit erred when it affirmed the trial court's ruling that results of polygraph testing of two persons were inadmissible.*

The petitioner also claims that his right to confront witnesses under the Sixth Amendment was violated by the Third Circuit's affirmation of a trial court ruling, excluding polygraph results from two witnesses. U.S. CONST. Amends. VI, XIV. Finding no dispute as to the record, we review this claim as a mixed question of law and fact. *Ornelas*, 116 S.Ct. at 1662.

---

[6] Though established rules must be respected in order to assure fairness and reliability, they should not be applied mechanically to defeat the ends of justice by excluding evidence of a third party's guilt. *Chambers v. Mississippi*, 93 S.Ct. 1038, 1049 (1973). To this end the petitioner asserts that "[v]iolent propensities of a third party are admissible where it is alleged that the third party acted violently in the instant case." Doc. 1, p. 18 (citing *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977)). However, in *McClure* the third party's prior violent acts were admitted not to show that he had acted violently again but instead that the defendant had a lack of criminal intent because he was being intimidated by the third party. *Id.* at 672–73. We find this ruling unavailing to the circumstances before us.

[7] *See, e.g.,* DAVID P. LEONARD, NEW WIGMORE EVID. OF OTHER MISCONDUCT § 1.2 THE CHARACTER EVIDENCE RULE: RATIONALES (Aspen).

At the trial Detective Chad Cradeur ("Cradeur") testified for the state about his role in the investigation. Doc. 10, att. 4, pp. 47–60. Prior to that the petitioner sought to introduce polygraph test results from two persons interviewed in the investigation. He contended that these results were necessary both for substantive reasons as well as to impeach the credibility of Cradeur.[8] Doc. 9, att. 7, pp. 237–41. However, the trial court ruled that the results were inadmissible based on a ban on polygraph test results as evidence in criminal proceedings. Doc. 9, att. 8, pp. 50–54. This ruling was affirmed by the Third Circuit on interlocutory appeal. Doc. 1, p. 26.

We have already discussed a defendant's constitutional right to confront witnesses against him, included in his right to present a complete defense. This right is impermissibly abridged "by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 126 S.Ct. at 1731. However, it does not equal "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor*, 108 S.Ct. at 653. The Supreme Court also holds that per se rules against the admission of polygraph evidence do not violate a defendant's constitutional right to a complete defense, due to the technique's insufficient reliability. *United States v. Scheffer*, 118 S.Ct. 1261, 1264–66 (1998).

Polygraph admissibility is a matter of state law. *E.g.*, *Mannings v. Epps*, 695 F.Supp.2d 323, 366 (N.D. Miss. 2009). This matter is well settled in Louisiana where it is a matter of "judicial policy" to exclude polygraph results because of findings that their probative value is outweighed by the dangers in their use. *State v. Stucke*, 419 So.2d 939, 946 (La. 1982). Accordingly, polygraph results may not be used in a criminal trial as proof of guilt or innocence. *State v. Cosey*, 779 So.2d 675, 685 (La. 2000).

---

[8] The petitioner alleged that Cradeur had misrepresented the results of the two polygraphs in a supplemental report, demonstrating bias and corruption in his investigation of the case. Doc. 9, att. 7, p. 241.

The petitioner contends that the Third Circuit's ruling was in error. He alleges that the ban only relates to substantive grounds and that the purpose of the tapes was to prove Cradeur's lack of credibility. However, he quotes selectively from attachments that were not transcribed into the record to show how Cradeur would have been impeached. *See* Doc. 1, pp. 22–24. The state disputes that any inconsistencies amount to a falsification by Cradeur. It charges that they were "minor human errors," likely based on a misunderstanding of the results, because the examinations were conducted by a different detective and then interpreted by Cradeur. Doc. 12, p. 30.

Based on the record before us, we cannot find that Cradeur's alleged misrepresentation was sufficient to justify introduction of the polygraph results. We also note that the petitioner made no secret of correspondingly seeking these polygraph results as substantive evidence. Such use would have naturally flowed from showing the discrepancy between the polygraph results and Cradeur's representation thereof. We therefore conclude that any indications of Cradeur's lack of credibility in the report were insufficient to overcome the ban on substantive uses of polygraph results. Accordingly, we find that this claim offers no basis for federal habeas relief.

### 4.  *Whether the petitioner was tried in violation of his constitutional right to a speedy trial.*

Finally, the petitioner contends that his conviction and sentence were obtained in violation of his right to a speedy trial under the Sixth Amendment. U.S. CONST. Amends. VI, XIV. Finding no dispute as to the record, we review this claim as a mixed question of law and fact. *Ornelas*, 116 S.Ct. at 1662.

As noted above, the petitioner was indicted on June 6, 2002. On June 10, 2002, he received court-appointed counsel.[9] Doc. 8, att. 2, pp. 199–200. In 2005 the petitioner filed a Motion to

---

[9] Attorneys from the Louisiana Capital Assistance Center were appointed at some point prior to July 19, 2007, and continue to represent the petitioner in the instant matter. *See* Doc. 8, att. 3, p. 74.

Quash the Indictment due to expiration of the statutory time limits on commencement of trial and violation of his right to a speedy trial. Doc. 8, att. 3, p. 46. He claimed that the delay was due in large part to a failure to identify a source of funds to pay his attorneys and that the state was responsible for this failure. *Id.* at 46–54. The motion was denied on November 20, 2006. Doc. 9, att. 3, 154–57. The court found that the matter could not have been brought to trial earlier due to the funding issue itself (which it concluded was not attributable to the state) as well as delays attributable to the defense in having the funding issue resolved and in other matters.[10] *Id.* Several more delays occurred before trial eventually began on September 22, 2009.[11]

In determining if a defendant's right to a speedy trial has been violated, the Supreme Court considers the following factors relevant: (1) the length of the delay, (2) the reason for the delay, (3) the petitioner's assertion of his right to a speedy trial, and (4) prejudice to the petitioner. *Barker v. Wingo*, 92 S.Ct. 2182, 2192 (1972). None of these provides "a necessary or sufficient condition" to find a violation of the right to a speedy trial. *Id.* at 2193. Instead, they "must be considered together with such circumstances as may be relevant." *Id.*

The length of the delay operates as a "triggering mechanism" of sorts. *Id.* at 2192. Here seven years passed between indictment and conviction, which seems presumptively prejudicial. However, the funding issue, a major cause of delay, was not attributable to the prosecution or the trial court. We also note the numerous delays attributable to the petitioner thereafter.

---

[10] The petitioner also filed another unsuccessful motion to quash the indictment based on violations of his right to a speedy trial on January 22, 2008, and a motion to reconsider same on September 21, 2009. Doc. 8, att. 7, pp. 129–43; Doc. 8, att. 10, 208–26.

[11] The defense filed a motion to recuse the trial judge, which was granted on September 7, 2007. Doc. 8, att. 3, p. 167; Doc. 9, att. 3, pp. 227–28. The case was suspended on state writs from September 14 until December 5, 2007. Doc. 8, att. 3, pp. 214, 219. The petitioner filed several motions on January 22, 2008, including a motion to continue the February 11, 2008 trial date, which was granted with opposition from the state. Doc. 8, att. 7, pp. 222–24; Doc. 9, att. 4, pp. 155–59. He also sought a sanity commission, which was appointed for the first time on July 18, 2008, and after multiple delays resulted in a declaration of competency accepted by the defense on April 15, 2009. Doc. 8, att. 9, pp. 215, 9–11; Doc. 9, att. 7, pp. 73–90.

The petitioner waited years before asserting his right to a speedy trial. He also sought multiple continuances and created other delays after asserting this right. *See* note 12, supra. While failure to assert one's right to a speedy trial does not operate as waiver, courts may nonetheless "weigh the frequency and force" with which a petitioner asserts this right. *Barker*, 92 S.Ct. at 2191. Here, given the defense's long delay in urging a speedy trial and its inconsistent behavior after doing so, we are unable to credit the petitioner under this factor.

Under the prejudice factor, the Supreme Court has identified three interests: to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. *Id.* at 2193. Petitioner claims he was prejudiced in that he suffered a job loss and a breakdown in his mental health from his pretrial incarceration, "the effect of denial of effective counsel for much of that time period,"[12] and direct prejudice to his defense through the unavailability of six witnesses.[13] Doc. 1, pp. 55–56.  We consider all of the allegations of prejudice to be serious matters; however, we have reviewed the record and agree with the findings of the Third Circuit and United States Supreme Court that the defense contributed substantially to the lag in bringing this case to trial. Accordingly, even though the delay was long and the petitioner might have been prejudiced thereby, the *Barker* factors do not favor a constitutional violation. This claim thus offers no basis for federal habeas relief.

---

[12] Here we note that the petitioner has been continuously represented and does not allege any instances of deficient performance by his attorneys.

[13] Petitioner does not allege what any of these witnesses would have testified to. The only indication comes from the police transcripts from interviews of two witnesses, Russell Clement and William Gallier. Doc. 8, att. 10, pp. 234–256; Doc. 8, att. 11, pp. 40–44, 103–16. Clement and Gallier (who was testifying based on what he heard from his brother) alleged that the victim had been involved in drug dealing and was killed as a result of that. The trial court refused to admit these transcripts, on the grounds that they were inadmissible hearsay, in part due to the defense's failure to prove that the declarants were reliable. *Boyer*, 56 So.3d at 1145–46. It also found that the statements were "not . . . reliable or trustworthy, having some minimal value to the defendant's right to present a defense." *Id.* at 1145.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 14th day of January, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE